DOC NO
REC'D/FILED

# United States District Court
# Western District of Wisconsin

2014 APR 16 AM 10:47

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

James A. Lewis,
(Full name of plaintiff[s])

486324
(Prisoner I.D. Number)

Case No. 14-cv-280-wmc
(Provided by clerk of court)

Plaintiff(s),

v.

Angela McClean, Meena Joseph, Paul Brown-Lucas, John Hackett, Shawn Foley, Joseph Cichnowicz, Brent Brown, Joni Shannon-Sharpe, Thomas Taylor
(Full name of defendant[s])

Defendant(s).

## COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

I. **PLACE OF PRESENT CONFINEMENT** (Provide full address)
Wisconsin Secure Program Facility 1101 Morrison Dr Boscobel, WI 53805

  A. Is there a grievance procedure in your prison/jail? YES ☒ NO ☐

  B. Have you filed a grievance concerning the facts relating to this complaint?
  YES ☒ NO ☐

  C. If you have used the grievance process:

  1. Describe what you did and the result, if any.
  I filed a complaint with the Inmate Complaint Committee (examiner). It was dismissed because examiners based the determination on responses by staff. After I file an appeal, I received the medical records in which what's in the chart is not what was told to ICE

  2. Is the grievance process completed? An appeal is filed

  D. If you did not use the grievance process, explain why not.
  Although I filed ICE complaints they were not against "prison conditions" but against treatment I received at the hands of staff. The response could come as late as mid-June by which time the deadline for filing a notice of claim with the Attorney General will have passed

4/07
P\Forms\42USC1983.Complaint

II. **PARTIES**

A. Your name (Plaintiff) James A. Lewis

B. Prisoner I.D. Number 486324

C. Your address P.O. Box 9900 1101 Morrison Dr Boscobel, WI 53805

(For additional plaintiffs provide the same information in the same format on a separate page.)

D. DEFENDANT (name) Meena Joseph

is employed as Medical Doctor

at Wisconsin Secure Program Facility (WSPF)

E. Additional DEFENDANTS (names and positions):
Angela McLean, RN WSPF; CO Paul Brown Lucas WSPF
CO John Hackett WSPF; Lt. Joni Shannon-Sharpe; WSPF
Lt. Joseph Cichanowicz; CO Thomas Taylor WSPF
CO Brent Brown WSPF; CO Shawn Foley WSPF

## III. PREVIOUS LAWSUITS

A. Have you begun other lawsuits in state or federal court relating to the same facts involved in this action?    YES ☐    NO ☒

B. Have you begun other lawsuits in state or federal court relating to your imprisonment?    YES ☐    NO ☒

C. If your answer is YES to either of the above questions, provide the following requested information.

1. Parties to the previous lawsuit

Plaintiff(s): _____

_____

Defendant(s): _____

_____

2. Date filed _____

3. Court where case filed (if federal court, name district; if state court, name the

Complaint Under the Civil Rights Act                                                                                     Page 4

    county) _____

4.  Case number and citation _____

5.  Basic claim made _____
    _____

6.  Current status (for example: Was the case dismissed? Was it appealed? Is it still pending?) _____
    _____

7.  If resolved, date of disposition _____

8.  If resolved, state whether for _____
    (Plaintiff or Defendant)

(For additional cases, provide the above information in the same format on a separate page.)

## IV. STATEMENT OF CLAIM

A.  State as briefly as possible the facts of your case. Describe how each named defendant is involved. Include the names of other persons involved, dates, and places. Describe specifically the injuries incurred. Do not give legal arguments or cite cases or statutes. You may do that in Item "B" below. If you allege related claims, number and set forth each claim in a separate paragraph. Use as much space as you need to state the facts. Attach extra sheets, if necessary. Unrelated separate claims should be raised in a separate civil action.

(1) On the morning of February 8, 2014 at approx. 5:30am I sat up and upon trying to stand I felt a sharp pain shooting from the base of my neck, straight down my spine to my tail bone.

(2) I found that I could neither stand nor lay back down because of the pain, in essence, I was stuck in a sitting position.

(3) After approx. 5 minutes I was able to finally lean forward enough, although in considerable pain,

**STATEMENT OF CLAIM continued**

to press the emergency call button.

④ An officer came over the intercom and asked what my emergency was.

⑤ I told him I had a tremendous amount of pain in my back and that I could neither stand up nor lay back down.

⑥ The officer said he would send someone to me.

⑦ An officer making his rounds stopped at my window and asked me what was wrong.

⑧ As he could not hear/understand me he opened the outter door giving him access to my cell.

⑨ The officer asked me what was wrong and I told him I had terrible pain in my back and — cont.

B. State briefly your legal theory or cite appropriate authority.

① Nurse McLean was in violation of Dept. of Adult Institution (DAI) policy 500.30.18 under III, use of nursing protocol Section E(13) that states: Regardless of the presenting complaint vital signs shall always be noted unless the visit was a telephone call; and IV (A) which states vital signs shall be taken for all nursing encounters. Taking a temperature could have at least ruled out an infection, such as, spinal

cont.

## STATEMENT OF CLAIM

cont.

that I could not stand or lay back down.

10. The officer asked if I needed a nurse, to which I replied, "yes."

11. After another 10-15 minutes passed, and having received no help, I eased to the call button, again.

12. After around 15 minutes Lt. Cichinowicz and nurse McLean came to my cell.

13. I was asked what was wrong and I replied that I had a terrible pain in my back and I couldn't move.

14. I was told by nurse McClean that after "count" I would be brought to HSU to be seen.

15. At this time I had been sitting in the same position, unable to move, for over 30 minutes.

16. Crying, I told them I was hurting and that I couldn't even stand to pull my pants up.

17. Lt. Cichanowicz said I would have to come to the cell door to get shackled, after "count."

18. Again, I stated that I couldn't stand and that I was in pain.

19. Nurse McClean stated that if I wanted to get seen I had to come to HSU.

20. Lt. Cichanowicz again stated that I'd have to come to the door to get shackled if I wanted to get help.

21. Nurse McLean stated, "I'm not coming into your cell so if you want help you're going to have to come to HSU."


Case: 3:14-cv-00280-jdp Document #: 1 Filed: 04/16/14 Page 6 of 16

# STATEMENT OF CLAIM

cont.

22. I told them, "But I can't stand. I can't get up."
23. Lt. Cichanowicz said, "You got up to hit your call light."
24. I told him that I didn't stand, and then, although it caused me more pain, I showed him how I was able to "stretch" to reach the call light.
25. He (Lt. Cichanowicz) said that if I could stretch to reach the call light I could stretch my hands to the door to get cuffed.
26. I told the Lieutenant that the door was further away and that I would have to stand to reach the door.
27. By this time between the pain in my back and the frustration of trying to get them to understand my need for assistance, I was sobbing and crying freely.
28. The Lieutenant said that if he had to send COs in without shackling me first they would throw me down and cuff me from the back but if I came to the door they would cuff me in the front.
29. I told him, "But I can't stand up."
30. Lt. Cichanowicz told me to get on my knees and crawl to the door.
31. With that statement I felt a great deal of shame and humiliation. I was already crying and begging but he was actually telling me that the only way I could get help was to crawl on my knees, crying and begging.

Case: 3:14-cv-00280-jdp Document #: 1 Filed: 04/16/14 Page 7 of 16

Statement cont.

32. Nurse McClean then stated again that she was not coming into my cell and if I wanted help I needed to get shackled and brought to HSU.
33. Through tears I finally shouted, "What part of I can't move don't y'all understand?"
34. Nurse McClean said something to Lt. Cichanowicz and they both walked away.
35. About 5 minutes later they called over the intercom "Meals on unit" and since meals arrive after 6:30am I knew I had been sitting in pain in the same position for over an hour.
36. As soon as they announced "meals on unit" officers immediately came to my door with my bag breakfast.
37. The officer opened the trap in my door and sat the bag breakfast there.
38. I told the officer that I couldn't stand and to just push the bag on to the floor.
39. The officer told me if I couldn't come to the door I don't eat and he took back the bag and closed the door.
40. After sitting there for maybe 20-30 minutes and realizing I would not get help I eased myself to the floor in the hope of being able to make it to the door.
41. Upon my knees hitting the floor the pain immediately increased, causing me to go down face down to the floor.
42. When I cried out from the pain the inmate directly across from me, who had been listening from the beginning, asked me am I all right.

cont.

| | |
|---|---|
| 43 | When I shouted "NO" he asked if I fell out the bed. |
| 44 | I told him "NO" that I tried to make it to the door. |
| 45 | He told me that I "should know better" since I'm a nurse. |
| 46 | Crying, I told him "but they won't help me unless I come to the door." |
| 47 | Right away, I heard a female speaking to me from the cell door. |
| 48 | I shifted my eyes and saw someone in a white shirt. |
| 49 | She asked why I was on the floor. |
| 50 | I told her, "The male lieutenant (I didn't find out his name until later) told me I couldn't get help unless I crawled to the door" and that now that I was on the floor I'm in even more pain. |
| 51 | I had a blanket covering me because after I got to the floor and couldn't move I was able to pull the blanket off the bed and pull it over me because the floor was cold and cold air was blowing out the vent on the floor. |
| 52 | She (Lt. Shannon-Sharpe) told me that they don't come in the cells unless the inmate is shackled, at which time she got into an arguing match Nassau Winston, the inmate across from me, because of their treatment of me. |
| 53 | Angry, Lt. Shannon-Sharpe left. |
| 54 | I asked inmate Winston who she was and he said "Lt. Shannon-Sharpe." |
| 55 | I asked him what time it was and he said "7:10 am." |

## STATEMENT of CLAIM

cont.

56. I started crying even harder because I couldn't believe it had been over an hour and a half.
57. 30-45 minutes later two Correctional officers came and told me I was going to the hospital but first I had to remove the blankets, and come closer to the door.
58. I pushed the blankets off me, but couldn't get closer.
59. The officers started arguing with inmate Winston and then left.
60. The officers returned and an officer I later found out to be CO Taylor told me they were going to open my cell door and not to move. He stated he had a taser and let me hear it.
61. I said, crying and pleading, that I promise not to move; that my back was killing me and please hurry.
62. When the door opened CO Foley rushed into my cell and threw himself onto my back.
63. I screamed and screamed the pain was excruciating and I thought he had broken my back.
64. Crying I asked "Why did you jump on my back, why?" I asked over and over through my tears.
65. My hands were cuffed and COs Brown-Lucas and Hackett snatched and twisted my legs, increasing the pain, even though I was laying as still as possible; the only movement being my head while I continued to scream and cry.
66. After shackling my legs they said "Ok, we're going to put you in a wheelchair and take you to the van and to the hospital.

STATEMENT of Claim

cont.

67. I was mortified! I screamed "You can't put me in a wheelchair, I need a stretcher!"
68. They said "the doctor said you could go in the van".
69. I told them that the pain was straight down my spine from my neck down. I informed them that I was a nurse and I have pain from my neck down my spine and since I don't know what's wrong my neck and back should be supported.
70. They told me again that the doctor said it wasn't necessary.
71. I told them I was never assessed by medical staff so the doctor couldn't make that diagnosis, and to please call the doctor back.
72. They paid me no attention and put me in the wheelchair and rolled me down the halls screaming and crying.
73. They took me to a strip cage where on the way Lt. Shannon-Sharpe asked me if I was really a nurse.
74. I answered "yes" and she said "then why are you in jail?"
75. I told her my case was being appealed.
76. Lt. Shannon-Sharpe instructed me to be cuffed to the strip cage.
77. She instructed (she being Lt. Shannon-Sharpe) COs B. Brown and Taylor to stand me up so that I could be stripped and searched.
78. Upon standing me and my crying out that they were trying to kill me she (Lt. Shannon-Sharpe) changed her mind about the strip search and just had a wand

STATEMENT of CLAIM

cont.

passed over me to check for contraband
79. After being searched I was wheeled to the van.
80. The officers B. Brown and T. Taylor opened both rear sliding doors.
81. While one grabbed my legs the other climbed through the van and across the seat in order to grab me under my shoulders.
82. They lifted me to the edge of the seat and then while one held my legs the other pulled me along my back, constantly keeping me in pain, until I was completely in the van.
83. As I had to be placed on the bench seat directly behind the front seats there was only 6"-8" of space causing me to have to sit with my knees bent ensuring that I would stay in pain for the ride to the hospital.
84. I asked how long the ride would be to which they replied 6-10 minutes.
85. After arriving at Boscobel Area Hospital I had to be put back into a wheelchair.
86. To get me into the wheelchair they reversed their actions and COs B. Brown and T. Taylor, while one guided my legs the other pushed me by my back, to get me out of the van.
87. In the hospital Emergency Room I had to be given ativan to calm me and quiet my anxiety and given morphine, by injection, into my buttocks for the horrendous pain.

STATEMENT OF CLAIM

Cont.

88. I filed filed complaints with the Inmate Complaint Examiner.
89. The claims were dismissed, according to the claims, because of the responses given by Ms Miller and Lt. Shannon-Sharpe.
90. I received, after mailing off my appeals, the medical records I had requested, which showed that the information given to the I.C.E. does not match what is in the files, including the fact that The ICE was told I was sent to the hospital (a 6-8 minute ride) at 7:30AM But according to the hospital medical records I didn't arrive until 8:53AM, 1 hour 23 minutes later.

Cont. From Pg 6(B)

## LEGAL THEORY

1 cont. meningitis, a condition that could lead to death.

② I claim that my 8th Amendment right to be free from cruel and unusual punishment was violated.

③ I was a victim of deliberate indifference; use of excessive force; failure to intervene to halt the use of such force; and the denial of medical care, at various times, by the defendants.

④ Lt. C. Chanowicz, Lt. Shannon-Sharpe and Nurse McLean showed deliberate indifference, according to

Forbes v Edgar, 112 F.3d 262, 266 (7th Cir 1997) which states that "Deliberate indifference means that the officials were aware that the prisoner needed medical treatment but disregarded the risk by failing to take reasonable measures.

⑤ I cite also Farmer v Brennan, 511 U.S. at 847 which states "a prison official may be held liable for an 8th Amendment violation if (s)he knows that inmates face a substantial risk of serious harm and disregards that risk by taking reasonable measures to abate it," which happened when Lt. Shannon-Sharpe allowed CO Foley to jump on my back, and allowed COs Brown-Lucas and Hackett to jump on my legs, wrenching them and increasing the pain; and when Lt. Shannon-Sharpe not only allowed, but ordered COs Taylor and Brown to stand me up for a strip search, regardless of my apparent pain.

⑥ I would also cite Santiago v Walls, 599 F.3d 749, 756 (7th Cir 2010) which says a prison official may act with deliberate indifference if (s)he "effectively condones an attack by allowing it to happen."

cont.

⑦ The defendants violated the 8th Amendment, cruel and unusual punishment, citing Estelle v. Gamble, 429 US 97, 104, 97 S.Ct. 285, 50 L. Ed. 2d 251 (1976) which states prison officials violates 8th amendment cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical ~~staff~~ needs of prisoners. The standard set forth in "Estelle" includes both subjective and objective component. Gutierrez v Peters, 111 F.3d at 1364, 1367 (7th cir 1997).

⑧ For Dr. Joseph I cite Duckworth v. Ahmad, 532 F.3d 675, 679 (7th cir 1997) which states "a jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise inference that it was not actually based on medical judgement"; and citing Roe v Elyea, 631 F.3d 843, 857 (7th cir 2011) which states "a plaintiff can establish such indifference only if the professional's subjective response to plaintiff's medical need was so inadequate that it demonstrated an absence of professional judgement, that is, 'no minimally competent professional would have responded to those circumstances'". I state this as having been a Licensed Practical Nurse since 1989 and having worked over 13 years in both Illinois and Wisconsin and have never known a doctor to have a patient transfered without neck/back support when the patient complains of neck and spinal/back pain for fear of causing serious injury; nor would an EMT attempt to move such a person without taking precautions; in this case there was no physical assessment; the complaint was of neck/back pain along the spine; and the plaintiff was found on the

cont.-

## LEGAL THEORY

cont.

cont # ⑧ floor so a head injury may have been suffered; and finally, a mistake could cause paralysis.

⑨ Arnette v Webster, 658 F.3d, 742, 751 (7th cir 2005) quoting Green v. Daley, 414 F.3d 645, 653 (7th cir 2005) stating a prisoner need not show that he was literally ignored: "that the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was 'blatantly inappropriate as to evidence ~~deliberate~~ intentional mistreatment and likely to severly aggravate his condition'."

⑩ Prison officials have a duty under the 8th Amendment to provide medical care to those being punished by incarceration. Snipes v DeTella, 95 F.3d 586, 590 (7th cir 1996) (citing Estelle v. Gamble 429. US 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). To state an 8th amendment medical claim, a prisoner must allege facts from which it can be inferred that he had a "serious medical need" and that prison officials were "deliberately indifferent" to this need. Estelle, 429 US at 104; Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th cir 1997)

⑪ A medical need may be serious if it is ① life threatening; ② carries risk of serious impairment if left untreated; ③ results in needless pain and suffering when treatment is withheld, Gutierrez, 111 F.3d at 1371-73; "significantly affects an individuals daily activities," Chance v Armstrong, 143 F.3d 698, 702 (2d cir 1998); causes pain, Cooper v Casey, 97 F.3d 914, 916-17 (7th cir 1996); or otherwise subjects prisoner to substantial risk of serious harm,

Farmer v Brennan 511 US 825, 847, 114 S Ct. 1970, 128 L Ed 2d 811 (1994).

V.  **RELIEF YOU REQUEST**

State briefly and exactly what you want the court to do for you. Make no legal arguments. Do not use this space to state the facts of your claim. Use it only to request remedies for the injuries you complain about.

I would ask the court to exercise supplemental jurisdiction in a state case against the same defendants and using the same evidence. I accuse the defendants of assault and battery and of negligence an medical malpractice. I seek compensatory, punitive and consequential damages.

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this 3 day of April, 2014.

Signature of Plaintiff(s)

*James Lewis*

(If there are multiple plaintiffs, each must sign the complaint)

Prisoner I.D. Number(s)

James Lewis #486324