IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES A. LEWIS,

                      Plaintiff,

v.

ANGELA MCLEAN, MEENA JOSEPH,
PAUL BROWN-LUCAS, JOHN HACKETT,
CHRISTOPHER FOLEY, JOSEPH CICHINOWICZ,
BRENT BROWN, JONI SHANNON-SHARPE, and
THOMAS TAYLOR,

                      Defendants.

OPINION & ORDER

14-cv-280-jdp

---

      Pro se plaintiff James A. Lewis suffered an episode of severe back pain while incarcerated at the Wisconsin Secure Program Facility, and this suit arises out of the response to that episode. Plaintiff alleges that several WSPF staff members were deliberately indifferent to his serious medical need and that they used excessive force in moving him for treatment. Plaintiff also alleges that the medical staff committed medical malpractice. He brings suit under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights and state-law claims for medical malpractice.

      Now before the court are the parties' cross-motions for summary judgment and several additional motions by plaintiff. I will address all of these motions in this opinion, and I will grant defendants' motion for summary judgment on plaintiff's Eighth Amendment claims. With the Eighth Amendment claims out of the case, the basis for federal jurisdiction is gone, so I will exercise my discretion to dismiss plaintiff's state-law medical malpractice claim without prejudice.

UNDISPUTED FACTS

The parties' summary judgment submissions establish the following undisputed facts. Plaintiff was incarcerated at the Wisconsin Secure Program Facility when, on February 8, 2014, he awoke at approximately 5:30 a.m. with pain in his neck and back. He called for help using the emergency call button in his cell. At about 6:30 a.m., defendants nurse Angela McLean and Lieutenant Joseph C. Cichinowicz came to plaintiff's cell, planning to take him to the Health Services Unit. They told plaintiff to walk to the door so that they could restrain him for security purposes and transport him to the HSU. Cichinowicz told him that if he walked to the cell door, they would restrain his hands in front of his body, but if he did not, they would cuff him from the back. Cichinowicz further suggested that if plaintiff could not walk to the door, maybe he could kneel. Plaintiff maintained that he could not move, so McLean and Cichinowicz left.

A video recording shows the activities in plaintiff's cell beginning about 7:12 a.m., when plaintiff eased himself from his bed onto the floor and pulled a blanket from his bed to cover himself. Defendant Lieutenant Joni Shannon-Sharpe came to the cell and spoke with plaintiff about his pain, then left. A few minutes later, Shannon-Sharpe returned with another officer and asked plaintiff to remove the blanket. He complied.

The officers left again and returned just before 8:00 a.m. with defendants Thomas Taylor, Paul Brown-Lucas, John Hackett, and Christopher Foley planning to take plaintiff to the hospital. The officers told plaintiff that they were going to enter the cell to restrain him as he lay on the floor. They warned plaintiff that they were armed with a taser, and then they opened the door. Foley entered the cell and secured plaintiff's head and arms. Brown-Lucas and Hackett also entered the cell and restrained plaintiff's legs. Once plaintiff's arms and legs

2

were shackled, the officers sat plaintiff up and Brown-Lucas, who is a first responder, conducted a physical assessment of plaintiff's back. Defendant Brent Brown, who is also a first responder, was also in the cell for the assessment. Brown and Brown-Lucas did not find any traumatic injuries or deformities.

Defendants then informed plaintiff that they were going to put him into a wheelchair, and then into a van to drive him to the hospital. Plaintiff protested that he needed to lie flat on a stretcher to protect his neck and back. But defendants told him that the prison doctor, defendant Meena Joseph, had approved transporting him by van. Before leaving the prison, defendant Shannon-Sharpe ordered officers to stand plaintiff up to be searched for contraband. Defendants Taylor and Brown attempted to lift plaintiff into a standing position, but when he cried out in pain, they sat him back down and instead used a wand to search him.

Defendants then wheeled plaintiff to the van, and Taylor and Brown lifted plaintiff into the van from under his shoulders and his legs. They pulled him into the van face-up across the bench seat. They then drove him to the Gunderson Boscobel Area Hospital emergency room and assisted him out of the van. Medical records reflect that plaintiff arrived to the hospital at 8:53 a.m. He was diagnosed with muscle spasm and myalgia,[1] given pain medication, and discharged at 10:24 a.m. that day.

---

[1] The American Heritage Medical Dictionary defines myalgia as "[m]uscular pain or tenderness, especially when diffuse and nonspecific."

ANALYSIS

A. **Plaintiff's motion to amend the complaint to change one defendant's name**

Plaintiff previously moved to amend his complaint to correct the names of two defendants. Dkt. 23. I granted his request in part, and sought additional information before changing Shawn Foley's name. Dkt. 25. Plaintiff responded with a letter, explaining that staff at the Wisconsin Secure Program Facility initially gave him the wrong name, but when he learned that the correct name was Christopher, he moved to amend his complaint. Dkt. 29. I will grant the motion and allow plaintiff to change Shawn Foley to Christopher Foley.

B. **Plaintiff's motions for reconsideration**

1. **Denial of leave to proceed on state law assault, battery, and negligence claims**

I denied plaintiff leave to proceed on his state law claims of assault, battery, and negligence because he failed to comply with the notice of claim provisions in Wis. Stat. §§ 893.82(3) and (3m). Dkt. 15. Those statutes require a prisoner to serve written notice on the Attorney General and then wait until the Attorney General denies the claim or until 120 days pass before filing suit. Plaintiff wrote his notice to the Attorney General on March 21, 2014, and had it notarized. He mailed it on May 23, 2014. But plaintiff filed his complaint in this court on April 16, 2014, before the Attorney General denied the claim and long before 120 days had passed. Because plaintiff filed his complaint prematurely, I denied him leave to proceed on the claims of assault, battery, and negligence. (The notice of claim requirements do not apply to plaintiff's medical malpractice claim. Wis. Stat. § 893.82(5m).)

In his motion for reconsideration, plaintiff contends that his claims should not be time-barred because he never filed those claims in *state* court. According to plaintiff, his

4

federal complaint merely gave me the option of considering those claims, but they should "not be construed as a filing." Dkt. 26, at 2. But the notice of claim requirements in Chapter 893 apply equally to actions that are filed in federal court and in state court. *See, e.g., Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010). When plaintiff filed his complaint in this court, alleging violations of both state and federal law, he "commenced" his action before the statutory prerequisites were satisfied.

Plaintiff contends, in the alternative, that he should be allowed to proceed on these claims because the Attorney General never responded to his March 23, 2014 notice, and more than 120 days passed before my order denying him leave to proceed. But the statutory language is clear: a "prisoner may not commence the civil action or proceeding until the attorney general denies the claim or until 120 days after the written notice." Wis. Stat. § 893.82(3m), *see also Badger Catholic*, 620 F.3d at 782 ("Wisconsin does not have a doctrine of constructive compliance; it requires strict performance of all statutory conditions."). Plaintiff commenced the action prematurely when he filed his complaint on April 16, 2014. My subsequent order issued October 8, 2014, does not give plaintiff a new commencement date.

Because plaintiff commenced this suit without satisfying the statutory prerequisites, plaintiff may not proceed on his state law claims of assault, battery, and negligence. His motion for reconsideration, Dkt. 26, is denied.

### 2. Grant of leave to file security policies under seal

In support of their motion for summary judgment, defendants relied in part on WSPF security policy documents, which they filed with a motion to seal. Dkt. 47. Plaintiff did not respond to this motion. In his order granting defendants' motion, Dkt. 67, the magistrate

judge accepted that disclosure of the policies posed a security risk. But he anticipated that sealing these documents would prevent plaintiff from preparing for trial, so he set out three options: (1) defendants could implement some procedure allowing plaintiff to read the policies; (2) the court could recruit counsel for plaintiff so that counsel could access them on plaintiff's behalf; or (3) the court could eschew reliance on the sealed documents in deciding the summary judgment motions. *Id.*

Plaintiff has asked me to reconsider the magistrate judge's decision to allow defendants to file the security policies under seal. Dkt. 70. I will deny plaintiff's motion because I will disregard the WSPF security policies in deciding the motions for summary judgment.

### 3. Denial of assistance recruiting counsel

Plaintiff also asks me to reconsider my decision denying him assistance recruiting counsel. Dkt. 70 and Dkt. 73. Plaintiff requested assistance recruiting counsel because he does not have a legal education and believes that he cannot navigate the complex issues in this case, including issues that require medical expertise. Dkt. 19. I previously denied plaintiff's motion because, at that point, he had failed to demonstrate that the issues exceeded his ability. Dkt. 25. In his motion to reconsider, plaintiff restates the same reasons for seeking the assistance of counsel. I will again deny his motion to appoint counsel.

Plaintiff has done a good job in representing himself on his Eighth Amendment claim. Although I am granting defendants' motion for summary judgment on that claim, I do not believe that counsel could have obtained a different result. But plaintiff's medical malpractice claim is a different matter. That claim would require plaintiff to marshal and present medical evidence, which would probably outstrip his abilities.

6

I do not believe that plaintiff's malpractice claim is a particularly strong one. However, if I were to retain jurisdiction over the state-law medical malpractice claim, I would attempt to recruit counsel for plaintiff. But because I will dismiss the malpractice claim without prejudice, I will not recruit counsel. His motion for reconsideration is denied.

## C. Plaintiff's motion to compel discovery

### 1. Video of cell extraction

Plaintiff has moved under Federal Rule of Civil Procedure 37 to compel a video of defendants extracting him from his cell on February 8, 2014, and transporting him to intake. Dkt. 33. Plaintiff has had several opportunities to review the video from that day taken by the camera inside his cell. But he contends that he remembers another video being recorded by a hand-held camera during his cell extraction, and he has made several failed attempts to see it. Plaintiff claims that he first requested the video on October 8, 2014, but that his request was denied for security reasons. Plaintiff followed up with his request multiple times and was consistently denied access to the video. Defendants claim that there is only one video, the one from inside his cell, and that the additional recordings that plaintiff seeks do not exist. Dkt. 35, at 3.

Plaintiff contends that prison policy requires a separate video of planned use-of-force situations. But, as defendants plausibly explain, plaintiff was not in a planned use-of-force situation on the morning of February 8, 2014. Rather, defendants mounted a medical response that did not require a separate video, and thus defendants plausibly assert that there is no additional recording of the incident. Plaintiff has not adduced evidence to convince me otherwise, and the court cannot compel the production of a recording that does not exist. Plaintiff's motion concerning the video will be denied.

### 2. Defendant Joseph's response to certain interrogatories

Plaintiff has also moved under Rule 37 to compel additional responses to four of the interrogatories that he served on defendants. Specifically, plaintiff seeks defendant Meena Joseph's response to some interrogatories that ask for her medical opinion about the treatment of persons suffering from back and neck pain.

Defendants have objected to these interrogatories on the grounds that they are vague and call for speculation. Defendants' objections are not well founded. Dr. Joseph is propounded as defendants' medical expert. As such, she would offer her opinions concerning the proper standard of care for a patient with plaintiff's symptoms, which is the general area of the objected-to interrogatories. Plaintiff's interrogatories may not be quite as pointed as ones from trained legal counsel. But plaintiff is not far off the mark, and Dr. Joseph's responses are evasive. I would grant plaintiff's motion to compel if I were retaining jurisdiction over plaintiff's medical malpractice claim. But because I am not retaining jurisdiction, there is no need for additional discovery on that claim.

Responses to the objected-to interrogatories are not necessary to plaintiff's Eighth Amendment case, where the issue is whether defendants were deliberately indifferent to plaintiff's serious medical need. I will assume for purposes of this motion that plaintiff's back spasms constituted a serious medical need that required treatment. But plaintiff cannot establish an Eighth Amendment violation by showing that he received sub-standard or negligent care. Defendants have adduced evidence that demonstrates that they were not deliberately indifferent to plaintiff's medical needs, and thus responses that would tend to show that defendants were careless or incompetent are immaterial to the Eighth Amendment claim. I will deny plaintiff's motion to compel further responses from Dr. Joseph as

8

unnecessary because I am dismissing his malpractice claim and granting summary judgment for defendants on his Eighth Amendment claims.

**D. Sanctions**

Plaintiff has moved to sanction defendants under Federal Rule of Civil Procedure 37 for discovery abuses. Dkt. 79. Plaintiff argues that defendants' response to his motion to compel interrogatory responses, Dkt. 35, was inadequate enough to merit sanctions. Although I agree that Dr. Joseph's responses were evasive, sanctions would not be appropriate until the defendants violated a court order to supplement those responses. The motion for sanctions is denied.

**E. Summary judgment**

The parties have filed cross motions for summary judgment on three issues: (1) whether defendants were deliberately indifferent to plaintiff's serious medical need; (2) whether they committed medical malpractice under state law; and (3) whether they used excessive force against him. Dkt. 42 and Dkt. 48. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and [a party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because there are cross-motions for summary judgment, I will "look to the burden of proof that each party would bear on an issue of trial; [and] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact" as to that question. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

**1. Excessive force**

Plaintiff accuses defendants Shannon-Sharpe, Foley, Brown-Lucas, Hackett, Brown, and Taylor of using excessive force against him when they restrained and transported him to

9

the hospital. The Eighth Amendment prohibits cruel and unusual punishment, including "maliciously and sadistically us[ing] force to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Plaintiff's theory is that any force that defendants used beyond helping him lay on a flat board and delivering him in that position to the hospital was excessive. However, "conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Thus, the question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320. To distinguish between those two, the court considers: (1) the need to apply force; (2) the relationship between the need to apply it and the amount of force used; (3) the injury that the force caused; (4) the threat to the safety of staff and inmates; and (5) any attempt to temper the severity of the force. *Id.* at 321.

In this case, defendants restrained and transported plaintiff from his cell to receive medical attention. They needed to use some level of force, because plaintiff was unable to move himself. And defendants were entitled to restrain plaintiff before moving him out of his cell. Defendants first asked plaintiff to come to the cell door so that they could handcuff his arms in front of his body. But plaintiff, who was then lying on the floor, could not get up to walk to the door. After explaining what they were about to do, defendants entered the cell to handcuff plaintiff's arms behind his back and shackle his legs. Once he was restrained, defendants Brown and Brown-Lucas physically examined plaintiff. They then lifted plaintiff and sat him a wheelchair. Defendants then attempted to stand plaintiff up to be strip searched, but they abandoned the attempt and wand-searched him instead. They then lifted

him out of the wheelchair and into the van, and later out of the van and back into the wheelchair to enter the hospital.

I do not doubt that plaintiff was in pain and that it was uncomfortable to be restrained and moved while enduring back spasms. But plaintiff cannot make out an excessive force claim merely because he experienced pain while being taken for treatment. Plaintiff has adduced no evidence that any defendants used force maliciously or sadistically for the purpose of inflicting pain. Even if defendants were careless and inadvertently inflicted more pain than necessary, that would not be enough to constitute excessive force. And plaintiff has adduced no evidence even of carelessness. Defendants used a modest amount of force to restrain and move him to get him medical attention in the hospital. I will grant defendants' summary judgment on this claim.

2. **Deliberate indifference to a serious medical need**

Plaintiff also accuses defendants McLean, Joseph, Cichinowicz, Shannon-Sharpe, Foley, Brown-Lucas, Hackett, Brown, and Taylor of being deliberately indifferent to his back and neck pain. Although defendants responded to his call for help and took him to the hospital for diagnosis and treatment, plaintiff contends that they delayed assistance and increased his risk of harm by restraining him and then transporting him in a seated position instead of flat on his back.

Deliberate indifference to a serious medical need is a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" (internal quotation marks and citations omitted)). To prevail on his claim, plaintiff must demonstrate that: (1) he suffered an objectively serious medical condition, and (2) an official

was deliberately indifferent to that condition. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007). The standard requires both an objectively serious condition and a subjectively culpable state of mind. *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014) (internal quotation marks and citations omitted). Plaintiff's allegations of deliberate indifference are not enough at this point; he must also show with verifying evidence that defendants' actions caused him harm. *Liefer*, 491 F.3d at 714-15 (stating that the delay of treatment itself must have caused some degree of harm).

Plaintiff awoke with pain at approximately 5:30 a.m. and continued to suffer until he was treated at the hospital approximately three and one-half hours later. During those three and one-half hours, defendants monitored plaintiff and attempted to extract him from his cell to get him medical attention. He does not claim that defendants caused his injury or that they ignored his complaints of pain. Nor does plaintiff claim that the amount of time it took to get him treatment increased his pain level; he maintains only that his suffering was unnecessarily prolonged. He also alleges that the way that defendants restrained and positioned him while attempting to take him to the hospital caused additional pain.

But there is no evidence that defendants took longer than was necessary to assess plaintiff's medical issue and get him treatment. Nor is there evidence that defendants treated him unnecessarily roughly in restraining him. In fact, they attempted to accommodate his discomfort multiple times. They offered to handcuff him in the front instead of behind his back. And they opted to use a wand to search him while seated in lieu of conducting a full standing strip search. These uncontested facts do not support a conclusion that defendants

were deliberately indifferent to plaintiff's pain. Accordingly, I will grant defendants summary judgment on plaintiff's deliberate indifference claim.[2]

### 3. Medical malpractice

Plaintiff claims that defendants McLean, a nurse, and Joseph, a doctor, committed medical malpractice by failing to respond to plaintiff's medical condition with reasonably careful and competent care. Because the incident underlying this claim is the same as that underlying plaintiff's constitutional claims, I could exercise supplemental jurisdiction over this state-law claim. 28 U.S.C. § 1367. However, because I am granting summary judgment for defendants on all of the federal claims, I may decline to exercise supplemental jurisdiction over the state-law claim and dismiss it without prejudice. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

Based on the record developed so far, I do not believe that plaintiff's malpractice claim is a strong one. Ultimately plaintiff was diagnosed with muscle spasms and received appropriate treatment. The decision to transport plaintiff by wheelchair and van, rather than immobilized on a stretcher, might have been risky (because defendants did not at that point know for sure whether he had a spine injury that might have been worsened), but it does not appear to have caused any enduring injury. But the record pertaining to the malpractice claim is not well developed, due in part to plaintiff's pro se status which has hindered his development of the expert evidence he would likely need.

Accordingly, in the interest of "judicial economy, convenience, fairness, and comity," I will decline to exercise jurisdiction over plaintiff's malpractice claim and dismiss it without

---

[2] Because I conclude that defendants were not deliberately indifferent, I need not address defendants' arguments that they enjoy qualified immunity for their actions.

prejudice. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). If plaintiff has a good-faith basis for asserting claims of malpractice, plaintiff may refile this claim in state court, subject to the requirements and limitations of Wis. Stat. § 893.55.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion to amend his complaint to change Shawn Foley to Christopher Foley, Dkt. 29, is GRANTED.

2. Plaintiff's motion for reconsideration of the court order denying him leave to proceed on his state law claims, Dkt. 26, is DENIED.

3. Plaintiff's motion for reconsideration of the court order denying him assistance recruiting counsel, Dkt. 70, is DENIED.

4. Plaintiff's motion to compel, Dkt. 33, is DENIED.

5. Plaintiff's motion for sanctions, Dkt. 79, is DENIED.

6. Defendants' motion for summary judgment, Dkt. 48, is GRANTED. Plaintiff's motion for summary judgment, Dkt. 42, is DENIED, as described in the opinion. Plaintiff's state-law medical malpractice claim is DISMISSED without prejudice to plaintiff refiling the claim in state court.

7. Plaintiff's motion for denial of defendants' summary judgment motion, Dkt. 74, is DENIED.

Entered January 6, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge